IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JIMMY D. DUNCAN, #268420                  *
               Plaintiff,
       v.                                        *     CIVIL ACTION NO. DKC-13-448

D. KENNETH HORNING                  *
MR. WADE, CHIEF OF SECURITY
               Defendants.    *
                                                 *****

## **MEMORANDUM OPINION**

**Procedural History**

       This prisoner civil rights Complaint for damages, filed on February 11, 2013, raised a failure-to-protect claim. Plaintiff alleged that in 2010, during major construction at the Maryland Correctional Training Center ("MCTC") compound, work crews unearthed rocks which were left lying around and openly accessible to anyone using the walkway to the MCTC gymnasium, dining hall, medical department and various housing units. Plaintiff complains that after work hours the site was left unattended, and on November 4, 2010, he was severely attacked by another MCTC inmate who used the construction site rocks, placed in a sock, to fracture his skull. He contends that he underwent brain injury surgery at a local hospital, resulting in the removal of a piece of his skull and bone fragments.[1] (ECF No. 1).

       Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment in response to the Complaint. (ECF No. 12). Plaintiff has filed an Opposition and a Motion for Appointment of Counsel. (ECF Nos. 14 & 16). The pending dispositive motion is ready for consideration and may be resolved without hearing. *See* Local Rule 105.6 (D. Md.). For reasons to

---

[1] Plaintiff complains that he began to suffer symptoms from the assault after his March 2011 release from the Division of Correction. He also notes that he was in the hospital infirmary recuperating and heavily sedated for the first two months after his attack, making it impossible for him to file a timely remedy under Division of Correction Directive 185-002. (ECF No. 1 at Attachment 2).

follow, Defendants' Motion, construed as a Motion for Summary Judgment, shall be denied and Plaintiff's Motion for Appointment of Counsel shall be granted.

**Standard of Review**

Under Fed. R. Civ. P. 56(a):

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide

by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

Because summary judgment is a final adjudication on the merits, courts must employ the device cautiously. *See Hulsey v. State of Texas,* 929 F.2d 168, 170 (5th Cir. 1991). In prisoner self-represented cases, courts must be careful to "guard against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Jackson v. Cain,* 864 F.2d 1235, 1241 (5th Cir. 1989) ( *quoting Murrell v. Bennett,* 615 F.2d 306, 311 (5th Cir. 1980)).

**Analysis**

**Facts**

Defendants state that in 2010 there was a daily average of 2,455 inmates housed at MCTC. (ECF No. 12 at Ex. 1, Horning Decl.). In November of 2010, the month of Plaintiff's assault, MCTC underwent excavation for the construction of trenches for a new underground steam loop to provide heat to the prison. (*Id*.). Defendants maintain that the excavation of trenches was carefully monitored as correctional officers were stationed at each construction site and regularly patrolled the construction area. The fill dirt from the trenches was placed in dump trucks and removed from the prison and fences were constructed to secure the area where the trenches were being dug. (ECF No. 12 at Ex. 1, Horning Decl.).

According to MCTC Chief of Security Wade, Plaintiff was attacked by inmate Raynard Horne on November 4, 2010, and the attack was investigated by the Department of Public Safety and Correctional Services Internal Investigative Unit ("IIU"). Wade affirms he was unaware of any animosity between Plaintiff and Horne prior to the assault. (*Id*. at Ex. 2, Wade Decl.). Plaintiff

3

described the assault to IIU investigators as follows: he was returning from the gymnasium to Housing Unit 4 at approximately 7:50 p.m. when an inmate walking behind passed him and then assaulted him on the right side of the head. He followed the assailant into Housing Unit 4 and advised a correctional officer that he had been assaulted by the inmate, who had entered the recreation hall. That officer advised staff that Plaintiff had identified Horne as the assailant and found a home-made weapon, a "rock in a sock," at the entrance to Housing Unit 4. Plaintiff informed staff that he believed the assault was related to a verbal argument he had with Horne the previous day, November 3, 2010. (*Id*. at Ex. 3, IIU Report). The report indicated that there were no witnesses. (*Id*.). Plaintiff sustained a depressed skull fracture and had a titanium plate surgically implanted in his head.

After the assault, Horne was placed on Plaintiff's OBSCIS enemies list. (*Id*. at Ex. 1). Defendants affirm that prior to the assault, they were unaware of any animosity between Plaintiff and Horne. (*Id*. at Ex. 2). Defendants assert that the Complaint is subject to dismissal for the failure to exhaust administrative remedies, as his claim that he could not seek redress is belied by the fact that he was ambulatory immediately after the assault and he spoke to prison investigators. (ECF No. 14, Mem. at pgs. 7 & 8).

In his Opposition response, Plaintiff claims that he has set out a genuine dispute of material fact showing deliberate indifference and negligence on the part of Defendants. (ECF No. 14). He seemingly claims that vehicular and correctional officer movements and manned posts are recorded in log books; that during the month of November 2010, there was a correctional officer monitoring the construction site post from 7:00 a.m. to 4:00 p.m., but leaving the site unsecured until the next morning; and that while inmates are "patted down" and made to walk through a metal detector when exiting their housing area, they are not required to do so when exiting the gymnasium. (ECF No.

4

14). Plaintiff complains that the construction site was located inches from the walk path between the housing unit and the gymnasium. He additionally observes that in 2008 the Maryland Division of Correction instituted a policy to remove inmate padlocks and canned goods from the commissary due to a "myriad" of inmate-on-inmate assaults with hard objects concealed in socks. (*Id*.)

Plaintiff further argues that Defendants' declarations are false and made in an effort to "absolve themselves of gross negligence to notice and safeguard a known potential danger at the construction site." (ECF No. 14.) He contends that Defendants' asseverations do not "add up" because if dump trucks were in fact employed to remove the fill dirt, a fence and officers would not be needed to safeguard the site. Plaintiff claims that Defendants' dispositive motion is inadequate as they do not provide basic and relevant pieces of evidence, i.e., work-order records, invoices, or affidavits from dump truck companies who allegedly removed debris of fill dirt in November of 2010. (*Id*.) Most importantly, he contends that between October and December of 2010, several inmates suffered from similar assaults with the exact same weapons, rocks from the construction sites. (*Id*. at Exs. 2-4). Plaintiff thus claims that Defendants had ample knowledge that those rocks could cause harm.

Plaintiff again acknowledges that he did not file administrative remedies, but claims he was unable to do so from November 4, 2010 to March 30, 2011, because he was given morphine shots and continuously placed on heavy pain medications. (*Id*. at Ex. 2). Plaintiff implies that the medications rendered him unaware of the full and permanent extent of his injuries and thus, he "had no reason to file an administrative remedy action." (*Id*.)

**Applicable Law**

Deliberate indifference in the context of a prisoner failure-to-protect claim requires that a defendant "knows of and disregards an excessive risk to inmate health and safety; the official must

5

both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302-303 (4th Cir. 2004); *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997). Under Fourth Circuit law, liability under the *Farmer* standard requires two showings. First, the evidence must show that the official in question subjectively recognized a substantial risk of harm. It is not enough that the officers *should have* recognized it; they actually must have perceived the risk. *See Rich v. Bruce,* 129 F.3d 336, 340 n. 2 (4th Cir.1997). Second, the evidence must show that the official in question subjectively recognized that his actions were "inappropriate in light of that risk." *Id*. As with the subjective awareness element, it is not enough that the official *should have* recognized that his actions were inappropriate; the official actually *must have* recognized the problem. *See Brown v. Harris,* 240 F.3d 383, 390-91 (4th Cir. 2001).

Not every incident of violence subjects prison officials to liability under the Eight Amendment. *Farmer*, 511 U.S. at 834. Rather, the inmate must show that prison officials were deliberately indifferent to a substantial risk of serious harm. *Id.* Deliberate indifference requires a showing that defendants were more than just negligent as to the plaintiff's safety. *See Estelle v. v. Gamble,* 492 U.S. 97, 104 (1976). Specifically, Plaintiff must show that prison officials knew of and disregarded an excessive risk of harm. *Farmer,* 511 U.S. at 838.

Prisons are by nature inherently violent and dangerous places because they house dangerous people, many of whom have a propensity for violence, in congested conditions. Assaults are all too prevalent. The court is aware of a number of incidents of inmate-on-inmate assaults over the years involving the use of a various weapons, including batteries and locks in socks.

6

Plaintiff has been called upon to rebut Defendants' Declarations and materials with his own verified documents to establish a genuine dispute of material fact with regard to his personal safety claims. At this juncture, the Court finds that there is a material factual dispute as to what actions were taken by Defendants to safeguard the MCTC site and whether they had constructive notice of safety issues associated with the debris from the site. While there is no allegation that Plaintiff previously informed prison staff that he had been threatened by his assailant, Raynard Horne, there is some question as to whether MCTC administrators had become aware of security problems from the construction sites (prior similar assaults) and took necessary safety precautions.[2]

For the aforementioned reasons, Defendants' court-construed motion for summary judgment shall be denied, and Plaintiff's Motion for Appointment of Counsel shall be granted. A separate Order follows in compliance with the Memorandum Opinion.

Date: November 13, 2013                    /s/
                                   DEBORAH K. CHASANOW
                                   United States District Judge

---

[2] Likewise, while there is no dispute as to whether Plaintiff exhausted his administrative remedies, there is a genuine dispute as to whether "special circumstances" have been plausibly alleged that justify "the inmate's failure to comply with administrative procedural requirements." *See Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004).