IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JIMMY D. DUNCAN                             :

    v.                                        :   Civil Action No. DKC 13-448

D. KENNETH HORNING, et al.                  :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this prisoner civil rights case is a motion for summary judgment filed by Defendant David Wade. (ECF No. 56). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion for summary judgment will be denied.

**I.   Background**

    **A. Factual Background[1]**

Plaintiff Jimmy Duncan ("Plaintiff"), a former inmate at the Maryland Correctional Training Center ("MCTC"), was severely attacked by another inmate on November 4, 2010. The assailant, Raynard Horne, obtained a large rock from a major excavation site on the MCTC compound, put the rock into a sock, and beat Plaintiff with it. (ECF No. 33 ¶¶ 11-13). Mr. Horne fractured

---

[1] Unless otherwise noted, the facts outlined here are construed in the light most favorable to Plaintiff, the nonmoving party. A more complete recitation of Plaintiff's allegations can be found in the court's prior memorandum opinion. (*See* ECF No. 17, at 1-2).

Plaintiff's skull, resulting in the removal of a piece of his skull and bone fragments; Plaintiff continues to experience severe medical complications.  (*Id.* ¶¶ 17-18, 24, 32; *see* ECF No. 74-5 ¶ 4(d)).

The excavation site from which Mr. Horne obtained the rock was part of an ongoing construction project at MCTC that included the digging of trenches for an underground steam loop to provide heat to the facility.  (ECF No. 33 ¶¶ 6-8; *see* ECF Nos. 74-1, at 4-6; 74-2 ¶ 2).  Construction crews would unearth rocks but leave them unsecured and accessible to anyone using the walkway to the MCTC gymnasium, dining hall, medical department, and various housing units.  According to Plaintiff, corrections officers guarded the construction site only during the daytime while workers were present.  (ECF No. 33 ¶¶ 8-10).  Otherwise, the site was left "utterly unsecured and not properly safeguarded, and, thus, accessible to inmates."  (ECF No. 33 ¶ 9).

Plaintiff alleges that, at the time of the attack, Defendant Kenneth Horning was the Warden of MCTC and Defendant Wade was the MCTC Chief of Security (collectively, the "Defendants").  The complaint recites that "Defendants were responsible for the operation of [] MCTC in a safe and proficient manner, with a duty to exercise reasonable care to protect the inmates of that institution."  (*Id.* ¶ 5).  Plaintiff

alleges that similar attacks had occurred previously, and that Defendants "had foreknowledge that the rocks left accessible to inmates at the subject construction site could be used to cause serious harm, had already caused harm, and continued to pose a serious threat to the inmates." (*Id.* ¶ 15).

### B. Procedural Background

Plaintiff, proceeding *pro se*, commenced this action against Defendants on February 11, 2013, alleging a violation of 42 U.S.C. § 1983. (ECF No. 1). Defendants moved to dismiss or, in the alternative, for summary judgment (ECF No. 12), and the court denied the motion (ECF Nos. 17; 18). The court reasoned that there existed "a material factual dispute as to what actions were taken by Defendants to safeguard the MCTC site and whether they had constructive notice of safety issues associated with the debris from the site." (ECF No. 17, at 7).[2]

The court appointed *pro bono* counsel for Plaintiff, who filed an amended complaint. (ECF No. 33). He asserts that Defendants deprived him of rights secured by the Eighth Amendment to the United States Constitution by failing to provide reasonable protection at MCTC. (*Id.* ¶ 28). Defendants filed an answer and amended answer. (ECF Nos. 35; 55).

---

[2] The court also noted that a genuine dispute existed as to whether special circumstances justified Plaintiff's failure to comply with administrative procedural requirements. (ECF No. 17, at 7 n.2).

Subsequently, Defendant Wade moved for summary judgment. (ECF No. 56). The pending motion is fully briefed. (ECF Nos. 74; 77). Discovery is ongoing, and the court granted a consent motion to extend discovery until August 5, 2016. (ECF No. 84).

**II. Standard of Review**

A motion for summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Liberty Lobby*, 477 U.S. at 250; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005).

The moving party bears the burden of showing that there is no genuine dispute as to any material fact. If the nonmoving

party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof, then there is no genuine dispute of material fact. *Celotex*, 477 U.S. at 322-23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an "affidavit or other evidentiary showing" demonstrating that there is a genuine issue for trial. *See Ross v. Early*, 899 F.Supp.2d 415, 420 (D.Md. 2012), *aff'd*, 746 F.3d 546 (4th Cir. 2014). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted). In other words, a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted); *see Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003).

**III. Analysis**

"A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions. Whether

one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Farmer v. Brennan*, 511 U.S. 825, 844-45 (1994) (citations and internal quotation marks omitted).  In the failure-to-protect context, the Supreme Court of the United States established that an Eighth Amendment violation occurs:

> only when two requirements are met.  First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities.  For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.
> The second requirement follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.  To violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind.  In prison-conditions cases that state of mind is one of "deliberate indifference" to inmate health or safety.

*Id.* at 834 (citations and internal quotation marks omitted). Deliberate indifference requires that a defendant "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

> Liability under this standard thus requires two showings. First, the evidence must show that the official in question subjectively recognized a substantial risk of harm. It is not enough that the officers should have recognized it; they actually must have perceived the risk. *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). Second, the evidence must show that the official in question subjectively recognized that his actions were "inappropriate in light of that risk." *Id.* As with the subjective awareness element, it is not enough that the official should have recognized that his actions were inappropriate; the official actually must have recognized that his actions were insufficient. *See Brown v. Harris*, 240 F.3d 383, 390-91 (4th Cir. 2001).

*Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004).

Here, Plaintiff asserts a § 1983 claim alleging that Defendants' deliberate indifference to the conditions of his confinement deprived him of his Eighth Amendment rights.[3] Defendant Wade moves for summary judgment because "it was discovered by [defense] counsel that Defendant Wade was not in fact employed at MCTC at the time of Plaintiff's alleged injury." (ECF No. 56-1, at 1). Defendant Wade argues that

---

[3] Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

because he left his position at MCTC before the assault occurred, he cannot be shown to have "act[ed] under color of State law." (*Id.* at 3). Although he now contends that he was transferred from MCTC to Roxbury Correctional Institution ("RCI") on April 25, 2010 – more than six months prior to the assault giving rise to this action – his discovery comes two years after he signed a declaration in July 2013 (the "2013 declaration") attesting that:

> In November[] 2010[,] I was the Chief of Security at [MCTC] in Hagerstown, Maryland. For a period of time, including November[] 2010, construction of trenches was taking place for a new underground steam loop to provide heat to the facility. Excavation of the trenches was carefully monitored and the fill dirt from the trenches was placed in dump trucks and removed. In addition, fences were put up to secure the area where the trenches were being dug.

(ECF No. 74-2 ¶ 2). In support of his pending motion, Defendant Wade attaches a new affidavit (the "2015 affidavit") and employment records from the Maryland Department of Public Safety and Correctional Services ("DPSCS"). (ECF No. 56-1, at 5, 6-22). In the 2015 affidavit, Defendant Wade avers:

> 1. I mistakenly signed the [2013 declaration] that was submitted as Exhibit 2 to [the] [m]otion to [d]ismiss, or in the [a]lternative, for [s]ummary judgment (ECF No. 12, Exhibit 2) on July 23, 2013.
>
> 2. I was **not** employed as Chief of Security at [MCTC] on November 4, 2010, but rather as Chief of Security at [RCI] on that date.

8

> 3. My transfer to RCI occurred on April 25, 2010, as evidenced by the certified employment records of [DPSCS], attached hereto as Exhibit 1.

(ECF No. 56-1, at 5 (emphasis in original)).

Considering the available record, there is plainly a genuine dispute of material fact regarding Defendant Wade's employment at the time Plaintiff was attacked, and thus whether Defendant Wade can be held liable under § 1983. Beyond his contradictory assertions in the 2013 declaration and the 2015 affidavit, the employment records to which he refers are far from clear. (*See* ECF No. 56-1, at 6-22). Defendant Wade fails to identify which entry supposedly reflects his transfer from MCTC to RCI. Nor does he explain the significance of various columns, rows, and notations – handwritten or otherwise – throughout the employment records.[4] Moreover, there are multiple dates listed for each entry, and the court is unable to discern whether any employment action in fact was taken on April 25,

---

[4] Several handwritten notations appear in the records that Defendant Wade attached to his summary judgment motion. The handwritten comments apparently are meant to denote the institution or facility associated with employment actions. Relevant here, "MCTC" and "RCI" are written into the records without further explanation. (*See* ECF No. 56-1, at 15, 19, 21). The briefing papers do not address who made the handwritten notations.

2010.  (*See id.* at 19).[5]  The DPSCS employment records – which, Defendant Wade asserts, resolve the instant dispute – raise more questions given their lack of clarity.[6]  At bottom, Defendant Wade provides no guidance to the court to assist in comprehending the employment records, which fail to resolve inconsistencies created by Defendant Wade's sworn statements.

In addition to the inconsistencies presented by Defendant Wade alone, Plaintiff submits a sworn declaration sufficient to raise a genuine dispute of material fact.  According to Plaintiff, "Defendant Wade was Chief of Security at [] MCTC at the time of the [] assault upon me on November 4, 2010."  (ECF

---

[5] The employment record refers to the "PROC-DATE" and "EFF-DATE," among others.  Defendant Wade offers no explanation for these terms and no clarification regarding which date refers to his transfer from MCTC to RCI.

Attached to his reply brief, Defendant Wade submits an affidavit of Andrea Carbaugh, a DPSCS human resources officer.  According to Ms. Carbaugh, employment records indicate that "[Richard] Miller was reassigned from his position as Correctional Security Chief at RCI to the Correctional Security Chief at MCTC effective April 19, 2010."  (ECF No. 77-2, at 1-2).  Defendant Wade attaches no similar documentation that references his employment or transfer history during the relevant timeframe.

[6] The employment records appear to be inconsistent with portions of Defendant Wade's 2015 affidavit and deposition testimony.  Defendant Wade stated that he transferred from RCI to North Branch Correctional Institute ("NBCI") in or around November 2012.  (ECF No. 74-1, at 3).  The employment records, however, reflect no actions taken in November 2012.  (*See* ECF No. 56-1, at 20-21).  Similarly, Defendant Wade testified that he was transferred back to MCTC in January 2014 (ECF No. 74-1, at 3), but the employment records again are unclear (*see* ECF No. 56-1, at 21-21).

10

No. 74-5 ¶ 3). Plaintiff's declaration is based on the following recollections:

> a) That I knew that Defendant Wade was the Chief of Security based upon his name having been listed as the "Chief of Security" on each of the Notice Boards posted in all of the Recreational Halls at [ ] MCTC, as well as in the MCTC Dining Hall and in the MCTC Law Library;
>
> b) That, as adverted to above, I would see Defendant Wade walking rounds, around the MCTC compound, typically, three times per week, throughout 2010;
>
> c) That Defendant Wade would appear at periodic forums with the inmates at [ ] MCTC, during 2010, to give talks to the inmates and field questions from inmates after having been introduced as the MCTC "Chief of Security"; [and]
>
> d) That I distinctly recall having seen Defendant Wade, apparently, walking his rounds at the MCTC compound, from the vantage point of my infirmary hospital room window, located on the second floor of the infirmary at [ ] MCTC, while I was convalescing there, under medical care, shortly after I was operated on at Washington County Hospital, on November 4, 2010 . . . .

(*Id.* ¶ 4). Plaintiff contends that his sworn declaration is consistent with the 2013 declaration "that [D]efendant Wade now seeks to disavow." (ECF No. 74, at 12).

Defendant Wade challenges Plaintiff's recollection, arguing that no reasonable jury could be expected to believe Plaintiff's version of events. (ECF No. 77, at 2-3 (quoting *Scott v.*

11

*Harris*, 550 U.S. 372, 380-81 (2007))). Defendant Wade attacks Plaintiff's credibility, points to inconsistencies in Plaintiff's timeline of events, and argues that "MCTC does not have an infirmary on its compound." (*Id.* at 4).[7] Here, however, Defendant Wade has not shown Plaintiff's sworn testimony to be "so utterly discredited by the record that no reasonably jury could [] believe[] him." *Scott*, 550 U.S. at 380. Rather, the evidence adduced by the parties only highlights the genuine disputes of material fact in this case, including whether or not Defendant Wade served as Chief of Security at MCTC when Plaintiff was attacked in November 2010.

At the summary judgment stage, all reasonable inferences should be drawn in favor of the nonmoving party, and the court "may not make credibility determinations or weigh the evidence." *Edell & Associates, P.C. v. Law Offices of Peter G. Angelos*, 264 F.3d 424, 435 (4th Cir. 2001). "[I]f there clearly exist factual issues 'that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party,' then summary judgment is inappropriate." *Kress v. Food Emp'rs Labor Relations Ass'n*, 285 F.Supp.2d 678, 682 (D.Md.

---

[7] The record suggests that MCTC has a dispensary and medical ward. Plaintiff was treated at the dispensary shortly after he was injured. (*See* ECF No. 12-5, at 8). Plaintiff was housed at the medical ward upon his return to MCTC from Washington County Hospital. (ECF No. 77-1, at 6-7, 12, 15). The medical records submitted by Defendant Wade are almost entirely redacted. (*See* ECF No. 77-4).

2003) (quoting *Liberty Lobby*, 477 U.S. at 250). Given the discrepancies evident in Defendant Wade's sworn statements, inconclusive employment records, and Plaintiff's affidavit based on personal knowledge, genuine disputes of material fact exist sufficient to defeat the pending motion for summary judgment. Indeed, the briefing papers underscore the ongoing disputes at the heart of this case. Defendant Wade's motion will be denied.

**IV. Conclusion**

For the foregoing reasons, the motion for summary judgment filed by Defendant Wade will be denied. A separate order will follow.

                                            /s/
                                    DEBORAH K. CHASANOW
                                    United States District Judge