IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JIMMY J. DUNCAN                  :

   v.                           :   Civil Action No. DKC 13-0448

D. KENNETH HORNING, et al.       :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this prisoner civil rights case is a motion to dismiss or, in the alternative, for summary judgment filed by Defendants D. Kenneth Horning and David Wade. (ECF No. 98). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendants' motion, construed as a motion for summary judgment, will be denied.

**I. Background**

   **A. Factual Background[1]**

Plaintiff Jimmy Duncan ("Plaintiff"), a former inmate at the Maryland Correctional Training Center ("MCTC"), was severely attacked by another inmate in the evening on November 4, 2010. The assailant, Raynard Horne, obtained a large rock from a major

---

[1] Unless otherwise noted, the facts outlined here are construed in the light most favorable to Plaintiff, the nonmoving party. A more complete recitation of Plaintiff's allegations can be found in the court's prior memorandum opinion denying Defendants' prior motion to dismiss or, in the alternative, for summary judgment. (*See* ECF No. 17, at 3-5).

excavation site on the MCTC compound, put the rock into a sock, and beat Plaintiff with it while they were walking across the courtyard from the gym to their housing unit. (ECF No. 33 ¶¶ 11-13). The assault by Mr. Horne fractured Plaintiff's skull, resulting in the removal of a piece of his skull and bone fragments; Plaintiff continues to experience severe medical complications. (*Id.* ¶¶ 17-18, 24, 32; *see* ECF No. 74-5 ¶ 4(d)).

The excavation site from which Mr. Horne obtained the rock was part of an ongoing construction project at MCTC that included the digging of trenches for an underground steam loop to provide heat to the facility. (ECF No. 33 ¶¶ 6-8; *see* ECF Nos. 74-1, at 4-6; 74-2 ¶ 2). Construction crews would unearth rocks but leave them unsecured and accessible to anyone using the walkway to the MCTC gymnasium, dining hall, medical department, and various housing units. (ECF Nos. 14-2 ¶ 2; 14-3; 14-4; 14-5). According to Plaintiff, corrections officers guarded the construction site only during the daytime while workers were present. (ECF No. 33 ¶¶ 8-10). Otherwise, the site was left "utterly unsecured and not properly safeguarded, and, thus, accessible to inmates." (*Id.* ¶ 9).

Plaintiff alleges that, at the time of the attack, Defendant Kenneth Horning was the Warden of MCTC and Defendant Wade was the MCTC Chief of Security (collectively, the "Defendants"). (*Id.* ¶¶ 3-4). The complaint recites that

"Defendants were responsible for the operation of [ ] MCTC in a safe and proficient manner, with a duty to exercise reasonable care to protect the inmates of that institution." (*Id.* ¶ 5). Plaintiff alleges that similar attacks occurred previously, and that Defendants "had foreknowledge that the rocks left accessible to inmates at the subject construction site could be used to cause serious harm, had already caused harm, and continued to pose a serious threat to the inmates." (*Id.* ¶ 15).

    **B.   Procedural Background**

Plaintiff, proceeding *pro se*, commenced this action against Defendants on February 11, 2013, alleging a violation of 42 U.S.C. § 1983. (ECF No. 1). Defendants moved to dismiss or, in the alternative, for summary judgment (ECF No. 12), which was denied, because there existed "a material factual dispute as to what actions were taken by Defendants to safeguard the MCTC site and whether they had constructive notice of safety issues associated with the debris from the site" (ECF Nos. 17, at 7; 18).[2]

---

[2] The court's memorandum opinion, which was issued before the decision of the Supreme Court of the United States in *Ross v. Blake*, 136 S.Ct. 1850 (2016), rejecting the "special circumstances" exception to the exhaustion of administrative remedies requirement of the Prison Litigation Reform Act of 1995, also noted that a genuine dispute existed as to whether special circumstances justified Plaintiff's failure to comply with administrative procedural requirements. (ECF No. 17, at 7 n.2).

The court appointed *pro bono* counsel for Plaintiff, who filed an amended complaint. (ECF No. 33). He asserts that Defendants deprived him of his Eighth Amendment rights when they failed to provide reasonable protection at MCTC. (*Id.* ¶ 28). Defendants filed an answer and amended answer. (ECF Nos. 35; 55). Subsequently, Defendant Wade moved for summary judgment (ECF No. 56), and the court denied the motion because there existed "a genuine dispute of material fact regarding Defendant Wade's employment at the time Plaintiff was attacked, and thus whether Defendant Wade [could] be held liable under § 1983" (ECF Nos. 85, at 9; 86).

Defendants again moved to dismiss or, in the alternative, for summary judgment on January 27, 2017[3] (ECF No. 97), and Plaintiff submitted his opposition on May 10 (ECF No. 109).

## II. Standard of Review

A motion for summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.[4]  *See*

---

[3] Defendants failed to submit exhibits with their motion and amended their motion on January 30, 2017 with the exhibits attached. (ECF No. 98).

[4] Defendants move to dismiss or, in the alternative, for summary judgment. Where the parties present matters outside of the pleadings and the court considers those matters, as here, the motion is treated as one for summary judgment. *See* Fed.R.Civ.P. 12(d); *Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 949 (4th Cir. 1997); *Paukstis v. Kenwood Golf & Country Club, Inc.*, 241 F.Supp.2d 551, 556 (D.Md. 2003).

4

Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). To prevail on a motion for summary judgment, the moving party generally bears the burden of showing that there is no genuine dispute as to any material fact. *Liberty Lobby*, 477 U.S. at 248-50. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 249. In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)(quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005), but a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted).

**III. Analysis**

    **A. Claim against Defendant Wade**

Defendants first argue that summary judgment should be granted in favor of Defendant Wade because he was not employed at MCTC at the time of Plaintiff's injury and thus cannot be

held liable under § 1983. While the evidence may well lean toward that finding, there is evidence, some of Defendants' own making, that make it inappropriate to grant summary judgment.

In an initial Declaration signed in 2013 in support of Defendants' first dispositive motion, Wade stated that he was chief of security at MCTC in November 2010 and had knowledge of the construction trenches. (ECF No. 12-4). After that motion was denied, Defendants again moved for summary judgment, and attached another an affidavit by Wade stating that he mistakenly signed the declaration in July 2013 attesting that he was employed by MCTC in November 2010; he also attached employment records from the Maryland Department of Public Safety and Correctional Services ("DPSCS") (ECF No. 56-1). That motion for summary judgment was denied because the DPSCS employment records failed to reflect clearly Defendant Wade's transfer from MCTC to Roxbury Correctional Institution ("RCI") on April 25, 2010. (ECF No. 85, at 9, 13). Moreover, Plaintiff submitted a sworn declaration based on his personal knowledge that Defendant Wade was Chief of Security at MCTC at the time he was attacked by Mr. Horne sufficient to raise a genuine dispute of material fact. (*Id.*, at 10). In support of the pending motion, Defendants attach an April 14, 2010, memorandum from DPSCS Division of Correction Commissioner J. Michael Stouffer, confirming Defendant Wade's reassignment from MCTC to RCI, to be effective

6

April 19, 2010. (ECF No. 98-10). Defendants also attach an affidavit of Sheryl Bingaman, a DPSCS employee who serves as the timekeeper for RCI and MCTC, stating that Defendant Wade's timecards reflect that he was only maintaining hours at RCI between April 7 and November 30, 2010. (ECF No. 98-9 ¶ 8). Defendants attack Plaintiff's credibility and argue that "there is no credible evidence in the record indicating Defendant Wade's employment status was anything other than what the certified MCTC employment records . . . indicate." (ECF No. 98-1, at 7).

At the summary judgment stage, all reasonable inferences should be drawn in favor of the nonmoving party, and the court "may not make credibility determinations or weigh the evidence." *Edell & Assocs., P.C. v. Law Offices of Peter G. Angelos*, 264 F.3d 424, 435 (4th Cir. 2001). "[I]f there clearly exist factual issues 'that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party,' then summary judgment is inappropriate." *Kress v. Food Emp'rs Labor Relations Ass'n*, 285 F.Supp.2d 678, 682 (D.Md. 2003) (quoting *Liberty Lobby*, 477 U.S. at 250). Given the discrepancies evident in Defendant Wade's 2013 and 2015 affidavits regarding his employment at MCTC before and at the time Plaintiff was attacked and Plaintiff's sworn declarations that he "distinctly recalls" seeing Defendant Wade at MCTC

7

before and shortly after he was attacked on November 4, 2010, a genuine dispute of material fact still exists sufficient to defeat the pending motion for summary judgment. Therefore, Defendants' motion to grant summary judgment in favor of Defendant Wade is denied.

**B. Exhaustion of Administrative Remedies**

Defendants next argue that summary judgment should be granted against Plaintiff because Plaintiff has failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"). Under the PLRA, "[i]nmates are required to exhaust 'such administrative remedies as are available' before filing an action." *McMillian v. Caple*, No. DKC-15-1882, 2016 WL 4269054, at *4 (citing 42 U.S.C. § 1997e(a)); *see also Ross v. Blake*, 136 S.Ct. 1850, 1858 (2016)(An inmate "must exhaust available remedies, but need not exhaust unavailable ones."). Exhaustion is mandatory, and a court may not excuse a failure to exhaust. *Ross*, 136 S.Ct. at 1856-57. "An inmate's failure to exhaust administrative remedies is an affirmative defense; [D]efendant bears the burden of proving that Plaintiff had remedies available to him of which he failed to take advantage." *McMillian*, 2016 WL 4269054, at *4.

In *Ross*, the Supreme Court of the United States identified three kinds of circumstances where an administrative remedy is

unavailable. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S.Ct. at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.*

In Maryland, filing a request for administrative remedy with the warden of the prison is the first of three steps in the Administrative Remedy Procedure ("ARP"). *See* Md. Code Regs. ("COMAR") 12.07.01.04. The ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the inmate first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.07.01.05A. If the request is denied, a prisoner has 30 calendar days to file an appeal with the Commissioner of Correction. COMAR 12.07.01.05C. If the appeal is denied, the prisoner has 30 days to file a grievance with the

Inmate Grievance Office. See Md.Code Ann., Corr. Servs. §§ 10-206, 10-210; COMAR 12.07.01.03, 12.07.01.05B.

Plaintiff concedes in his amended complaint that he never filed an ARP request concerning Defendants' alleged failure to protect him from harm on November 4, 2010 (ECF No. 33 ¶ 19), but argues in his response to the current motion for summary judgment that an administrative remedy was not available to him under *Ross* for multiple reasons (ECF No. 109, at 10-16). Defendants did not reply to that response, but argue in their motion filed prior to Plaintiff's response that Plaintiff was physically capable of filing an ARP and was familiar with the ARP process. (ECF No. 98-1, at 18). Citing to *Ross* and Maryland Division of Correction Directive 185-003 ("DOC directive"), Plaintiff argues that an administrative remedy was not available to him because there was a DPSCS Internal Investigative Unit ("IIU") investigation pending. (ECF No. 109, at 12-13, 15). Under the DOC directive, an ARP grievance may not proceed when the IIU investigates an incident. (*Id.* at 15)("The Warden 'shall issue a final dismissal of an ARP request for procedural reasons when it has been determined that the basis of the complaint is the same basis of an investigation under the authority of [t]he IIU."). Although the IIU was directed against Mr. Horne and not against Defendants, as Plaintiff points out, it is questionable whether this is a

distinction that inmates should be expected to draw. (*Id.* at 13). The complexity of the interactions among the ARP and IIU processes is what led the Supreme Court to question whether prisoners in Maryland truly had "available" remedies under the PLRA. *See Ross*, 136 S.Ct. at 1860-62. While Plaintiff did previously file two unrelated ARP complaints in 2010 and 2011, it does not appear that those involved the IIU. Defendants bear the burden of proving that Plaintiff had remedies available to him of which he failed to take advantage. *McMillian*, 2016 WL 4269054, at *4. Defendants have failed to meet that burden. Because there is a question as to whether the IIU's investigation foreclosed Plaintiff's ability to file an ARP, Defendants' exhaustion defense fails.

**C. Plaintiff Has Set Forth Sufficiently a Failure to Protect Claim**

Defendants argue that Plaintiff has failed to satisfy the requirements for an Eighth Amendment failure to protect claim because there is no evidence that Defendants knew of a specific threat to Plaintiff or that they exercised deliberate indifference to Plaintiff's safety. (ECF No. 98-1, at 14). To establish a claim under § 1983, a plaintiff must prove that a person acting under color of state law deprived him of a constitutional right or a right conferred by a law of the United States. *Estate of Saylor v. Regal Cinemas, Inc.*, 54 F. Supp.3d

409, 416 (D.Md. 2014)(citing *Wahi v. Charleston Area Med. Ctr.*, 562 F.3d 599, 615 (4th Cir. 2009)).

As noted by the Supreme Court in *Farmer v. Brennan,* 511 U.S. 825 (1994):

> Prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners. Having incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course. Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating . . . of one prisoner by another serves no legitimate penological objective any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.

*Id.* at 833 (internal quotations and citations omitted). In a failure to protect claim a prisoner must show first that the harm he suffered was objectively serious and second that prison officials acted with deliberate indifference. *Id.* at 834. Deliberate indifference in the context of a failure to protect claim means that the defendant "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. However, "[p]rison officials

12

who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. A prison official's duty under the Eighth Amendment is to ensure "'reasonable safety.'" *Id.* at 844.

From the fact that Plaintiff required treatment from both the prison medical ward and an outside hospital, it is clear that his injuries were sufficiently serious to meet the first requirement for his claim. The second requirement of deliberate indifference is more problematic. Defendants argue that they did not know of a risk of specific harm to Plaintiff by Mr. Horne because Plaintiff did not report to a prison official that he was threatened by Mr. Horne prior to the assault. (ECF No. 98-1, at 11). Defendants' argument fails because a prison official cannot escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault. *Farmer*, 511 U.S. at 483. Defendants argue that although other inmates were harmed with rocks, concrete, or asphalt in a sock on five occasions in the seven months prior to Plaintiff's assault, they had no indication that an assault would happen to Plaintiff specifically. (ECF No. 98-1, at 12). Defendants again focus on

13

their knowledge of specific harm to Plaintiff and disregard their knowledge of an obvious, substantial risk to inmate safety generally.

> The question under the Eighth Amendment is whether prison officials, with deliberate indifference, exposed a prisoner to a sufficiently substantial "risk of serious damage to his future health," *Helling* [*v. McKinney*, 509 U.S. 25, 35 (1993)], and it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk.

*Farmer*, 511 U.S. at 843. *See also, Shrader v. White*, 761 F.2d 975, 982 (4th Cir. 1985)(knowledge by prison officials that scrap metal was not safeguarded and can be made into weapons, followed by failure to take action to prevent acquisition by prisoners, could state a claim).

Defendants further argue that they should not be held liable because they took "numerous measures" to ensure inmates could not gain access to the construction site or rocks excavated from the site, including holding regular detailed security meetings regarding the security of the site; maintaining extra personnel to supervise the site and prevent inmate access to the site; assigning personnel to follow behind trucks removing rocks from the site in order to pick up any debris that might fall off the truck; and assigning personnel to

14

conduct sweeps if the grounds in order to remove any rock or debris found in the areas between the housing units. (ECF No.98-1, at 13). Plaintiff has rebutted Defendants' assertions with his own evidence that the construction sites were unsupervised and unfenced in the evenings after the construction workers left for the day and until the next morning, contrary to Defendants' declarations. (ECF Nos. 14-2 ¶ 2; 14-3; 14-4; 14-5; 98-1, at 56-57, 78-80). Plaintiff has also presented evidence that Defendants failed to provide the "basic level of security, control and management of inmate movement, to prevent access to contraband weapons, and to properly secure the excavation site." (ECF No. 74-6, at 7). A genuine dispute of material fact exists as to whether Defendants had knowledge of a substantial risk to inmate safety generally posed by the steam loop construction site and prior inmate rock-in-a-sock attacks, and whether Defendants responded reasonably to any known risk of harm posed by the construction site. Defendants are not entitled to summary judgment.

    **D.    Qualified Immunity**

Defendants argue that they are entitled to qualified immunity because "even if Plaintiff has stated a claim, Defendants' actions cannot be held to have violated 'clearly established' legal rules." (ECF No. 98-1, at 19). "A qualified immunity inquiry involves two steps. A court generally

15

considers first, whether a constitutional violation occurred, and second, when the court finds such a violation, whether the right violated was 'clearly established' at the time of the official's conduct." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013)(citations omitted). The burden is on the plaintiff to prove that a constitutional violation occurred. However, the defendant must prove that the right was not clearly established at the time in question. *Henry v. Purnell*, 501 F.3d 374, 377–78 (4th Cir. 2007). Defendants' argument in this regard is so meager as to be non-existent. Their motion refers to the "status of the law as it relates to medical treatment." (ECF No. 98-1, at 19).

As explained above, there are genuine issues of material fact about Defendants' failure to protect Plaintiff from the risk of serious harm by another inmate. The remaining question is whether the right to Plaintiff's protection from harm was clearly established at the time of the alleged violation. An inmate's Eighth Amendment right to be free from a prison official's deliberate indifference to serious assaults by other inmates was clearly established at the time of Defendants' conduct. *Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987)("The [E]ighth [A]mendment protects a convicted inmate from physical harm at the hands of fellow inmates resulting from the deliberate or callous indifference of prison officials to

16

specific known risks of such harm."); *see also, Cox v. Quinn*, 828 F.3d 227 (4th Cir. 2016). Furthermore, as noted above, as early as 1985, the Fourth Circuit remarked that knowledge that materials in a prison can be fashioned into weapons, followed by failure to secure that material, could, even without knowledge that actual assaults took place, state an Eighth Amendment claim. *Shrader*, 761 F.2d at 982. Defendants have not proven that the right was not clearly established as of November 2010. Accordingly, Defendants are not entitled to summary judgment on the basis of qualified immunity.

### E. Plaintiff Has Presented Evidence of Defendants' Personal Involvement in Plaintiff's Failure to Protect Claim

Lastly, Defendants argue that they were not personally involved in the allegations supporting Plaintiff's failure to protect claim because Defendant Wade was not employed by MCTC at the time of the incident and Plaintiff has presented no evidence that Defendant Horning was indifferent to any misconduct on the part of his staff. (ECF No. 98-1, at 16). In order for liability to exist under § 1983, there must be personal involvement by the defendant in the alleged violation. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). The doctrine of *respondeat superior* does not apply in § 1983 claims. *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Liability of supervisory officials must be "premised on 'a recognition that

supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone,* 268 F.3d 228, 235 (4th Cir. 2001)(citing *Slakan v. Porter,* 737 F.2d 368, 372 (4th Cir. 1984)). As noted above, a genuine dispute exists as to Defendant Wade's employment by MCTC at the time Plaintiff was attacked by Mr. Horne, and he earlier attested to personal knowledge of the construction. Accordingly, Defendant Wade is not entitled to summary judgment on that basis. Plaintiff does not seek to hold Defendants liable in their supervisory capacities, but rather for their personal involvement in failing to protect Plaintiff from such harm. (ECF No. 109, at 8-9). Plaintiff's complaint alleges that Defendants were aware that rocks left accessible to inmates at the steam loop construction site could be used to cause serious harm, had already caused harm, and continued to pose a serious threat to the inmates, yet Defendants never undertook any action to protect or safeguard Plaintiff from that risk of harm. (ECF No. 33 ¶ 15). Plaintiff has alleged Defendants' personal involvement in his failure to protect claim, and Defendants are not entitled to summary judgment.

**IV. Conclusion**

For the foregoing reasons, the motion for summary judgment filed by Defendants is denied.  A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge
